UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| WELLS FARGO & COMPANY, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-cv-02764-PJS-TNL |
| | ) | |
| | ) | |
| v. | ) | **Report of Special Master** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

# REPORT DECIDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION UNDER FRCP 56(d)

## Plaintiff's Motion for Partial Summary Judgment

A substantial portion of this case arises from a challenge to the legality of foreign tax credits claimed by Plaintiff in connection with the STARS transaction. Defendant contends that the STARS transaction is a sham transaction that is motivated by tax avoidance and has no economic substance. At least a portion of the economic substance

1

analysis will be based upon a calculation of the potential profitability of the STARS transaction to Plaintiff.

Plaintiff has moved for a partial summary judgment based upon the decision of the Court of Appeals for the Eighth Circuit in IES Industries, Inc. v. Commissioner, 253 F.3d 350 (2001). In that case, the economic substance of a transaction involving in part the legality of certain foreign tax credits was challenged by the United States as a sham transaction having no economic substance. The Court ruled in favor of the taxpayer, finding, inter alia, that the transaction in question had sufficient economic substance. In its financial analysis of profitability in connection with the question of economic substance, the Court held that U.S. and foreign taxes would not be considered to be an expense. Plaintiff's motion for a partial summary judgment asks in effect for a declaration that the common law economic substance test to be applied to the STARS transaction is governed by the precedent established for courts in the Eighth Circuit and must, therefore, be based upon a profit analysis that does not treat foreign taxes to be an expense of the transaction.

## Defendant's Motion under FRCP Rule 56(d)

Defendant initially responded to the motion for partial summary judgment by challenging the appropriateness of the motion. It moved under FRCP 56(d) to deny Plaintiff's motion for partial summary judgment in part on the ground that Plaintiff's motion was not properly characterized as a motion for summary judgement, and should

not be considered on the merits. As directed by the briefing schedule established by the

Special Master, Defendant's motion under FRCP 56(d) was subsequently accompanied by

a brief in opposition to Plaintiff's motion addressing the merits of that motion.

## Defendant's Motion under FRCP 56(d) Is Denied

Rule 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition [to a motion for partial

summary judgment], the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Defendant's motion was not accompanied by an affidavit or declaration indicating the

facts that would be "essential to justify its opposition," but relied upon the general

assertion that Plaintiff's motion was a motion *in limine*; was premature because there

were more facts that had to be developed to deal with the issues raised by the motion; in

effect, that it was not really a motion for partial summary judgment; and that Plaintiff had

provided no specific evidence of profit potential.

First, Paragraph 20(a) of the Order of June 13, 2011, appointing a Special Master

in this case specifically provides that motions *in limine* "shall not be considered pretrial

discovery" which the Special Master is authorized to address.  Accordingly, if Plaintiff's

motion for partial summary judgment is in fact a motion *in limine*, there would be no jurisdiction to consider Plaintiff's motion.  It is true that granting Plaintiff's motion would render irrelevant the consideration of foreign taxes as an expense of the transaction for purposes of the economic substance test .  However, such a consequence would not appropriately characterize the motion as one *in limine*.  If such were the case, almost any successful motion for partial or total summary judgment could be so characterized because the effect in almost all such instances would be to render certain evidence to be irrelevant.  Moreover, Part C of the Order of June 13, 2011, explicitly prescribes procedures for dealing with summary judgment motions that might be filed by the parties. Accordingly, in the absence of direct authority for treating Plaintiff's motion as one *in limine* referred to in Paragraph 20(a) of the Order of June 13, 2011, the motion can be considered on the merits.

Secondly, Defendant argues that the motion is premature because more evidence must be developed in discovery to deal with the proper application of the economic substance test.  In its briefs and in the Hearing of October 14, however, Defendant did not cite any specific financial data that might be necessary to determine whether foreign taxes, under the *IES* case, can be properly considered to be an expense in determining potential profitability in the context of the economic substance test that had not thus far been produced or elicited.[1]  Moreover, Defendant's submissions included expert

---

[1] Transcript of October 14 Hearing ("Transcript"), pp. 62-64.

evaluations of financial data upon which its position is at least partially based. Plaintiff argues that its motion asks solely for a conclusion of law, i.e. the precedential authority of the *IES* decision in the Eighth Circuit, so that any facts that might be developed would be analyzed in the context of the conclusion of law. In other words, whatever the foreign income taxes turn out to be, they should not be considered as an expense of the transaction for purposes of the economic substance analysis..

Thirdly, Defendant bases its motion under FRCP 56(d) on the contention that Plaintiff's motion is not properly characterized as a motion for partial summary judgment. Plaintiff responds that its motion would resolve a number of issues that would have the effect of accelerating the litigation in this case by excising irrelevant issues from further disputation.

FRCP 56(a) authorizes the Court to consider motions for summary judgment or partial summary judgment on a "claim or defense–or the part of each claim or defense." Moreover, the rule provides that "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Because Plaintiff's motion would resolve at least one portion of a claim in the litigation, it is appropriate to treat it as a permissible motion for partial summary judgment.

Finally, Defendant opposes consideration of Plaintiff's motion on the ground that Plaintiff has not offered evidence of profit potential in support of its motion. However, as

5

indicated previously, Plaintiff's motion seeks a clear conclusion of law that would apply

regardless of evidentiary disputes about the magnitude of any foreign taxes that may have

been paid.  Plaintiff may or may not turn out to have expected or realized a profit from the

STARS transaction, but the motion is limited to one aspect of the way in which such

questions are to be addressed.

In light of these considerations, Defendant's motion under FRCP 56(d) is denied,

and Plaintiff's motion for a partial summary judgment will be considered on its merits.

## Eighth Circuit Precedent: The IES Case

As indicated previously, the principal case upon which Plaintiff's motion for

partial summary judgment is based is IES Industries, Inc. v. Commissioner.  In that case

the taxpayer, a U.S. corporation, in effect purchased shares of stock in a foreign

corporation[2] prior to the record date for a dividend distribution.  At virtually the same

time, the taxpayer contracted to resell the shares back to the original seller on a closing

date after the dividend had been paid.  As a result, the taxpayer was the shareholder on

the record date for the dividend distribution. The dividends were distributed to the

taxpayer, but were subject to a foreign withholding tax.  The taxpayer thus received a

payment equal to the amount of the dividend less the amount of the taxes withheld and

paid over to the foreign government.  Corporations involved in the transaction were

organized in the United Kingdom, the Netherlands and Norway.  The withholding tax rate

---

[2]  The taxpayer in fact purchased American Depository Receipts, or ADRs, which
represent shares of a foreign corporation held in trust by a U.S. bank.

in each instance was 15 percent, as authorized by applicable bilateral income tax treaties.

Such withholding taxes on dividend income are generally creditable under the Internal Revenue Code.[3] However, the original owner of the shares were entities exempt from U.S. tax, such as a pension fund, that could not benefit from a foreign tax credit. The purchase and resale price was based upon the market trading price of the stock. The stock was originally purchased for a price equal to the market plus 85 percent of the dividend (which was the net amount to be received after the withholding tax had been subtracted). The resale price was the market price of the shares after the dividend. In addition, certain fees and commissions were paid to an intermediary that effected the transaction and interest was paid because the shares were purchased by the taxpayer on a margin account. At the end of the related series of steps, the tax exempt entities once again owned the shares in question.

The principal tax results reported by the taxpayer were:

1. The gross amount of declared dividend was ordinary income (which is the dividend actually paid to the shareholder and the foreign tax liability satisfied by the withholding mechanism);

2. A foreign tax credit equal to the withholding tax was claimed (in the international context, a withholding tax is usually paid by the corporation making a dividend distribution to a foreign shareholder, but the actual income taxpayer is the shareholder that has realized dividend income);

---

[3] Sections 901 and 903 of the Internal Revenue Code authorize a credit for foreign income taxes and taxes in lieu of foreign income taxes. Withholding taxes on dividend payments by foreign corporations are generally considered to be creditable.

3.  A short-term capital loss was taken which derived from the resale of the stock as of a date following the distribution of the dividend.[4]  (This capital loss was applied to capital gains realized in prior taxable years, thereby generating tax savings in those years.)

The Government contended that the transaction was a sham without economic substance and denied the availability of the foreign tax credit, the short-term capital loss and a deduction for the expenses of the transaction.  The District Court granted summary judgment against the taxpayer with respect to these issues and concluded that the transactions constituted shams that would not be recognized for tax purposes because the transactions "were shaped solely by tax avoidance considerations, [and] had no other practical economic effect . . . ."

The Court of Appeals for the Eighth Circuit reversed this portion of the District Court decision and found that the transactions had both economic substance and a business purpose.  Therefore, they were not properly characterized as sham transactions. Consequently, the taxpayer was entitled both to the foreign tax credit and the short-term capital loss.

The application of the economic substance doctrine by the Court of Appeals was based in substantial measure upon an examination of the net profit realized by the taxpayer in the related transactions.  The Government argued that the foreign taxes should

---

[4] The taxpayer treated commissions as a part of the cost of the shares or as a reduction of the proceeds of the sale and deducted the interest expense attributable to the margin account.

not be considered in this analysis because it was exactly those taxes whose creditability
was under review:

> The government insists that, "absent the tax benefits that were the sole reason for
> the transactions, each series of ADR trade pairs resulted, as pre-planned, in an
> economic loss." . . . Under that view, economic benefit accrues to IES *only* if it
> receives the foreign tax credit.     In other words, the government would have us
> regard only 85% of the dividends as income to IES, notwithstanding that the IRS
> treats 100% as income for tax purposes.

> The Court of Appeals disagreed:

> We reject the government's argument and agree with IES that the law supports our
> contrary conclusion: the economic benefit to IES was the amount of the *gross*
> dividend, before the foreign taxes were paid.  IES was the legal owner of the ADRs
> on the record date.  As such, it was legally entitled to retain the benefits of
> ownership, that is, the dividends due on the record date.  While it received only
> 85% in cash, 100% of the amount of the dividends was income to IES.[5]

Plaintiff's present motion for partial summary judgment is based upon this
conclusion. It contends that the decision of the Eighth Circuit in the *IES* case has not been
modified and must, therefore, be applied by a District Court in the Eighth Circuit.
Because the Court of Appeals held "as a matter of law" that the foreign taxes would not be
considered in the calculation of the economic substance of the transaction, Plaintiff in this

---

[5] 253 F.3d at 354.

action seeks a ruling at this time that foreign income taxes paid in the STARS transaction

are effectively irrelevant in applying the economic substance test to that transaction in the

context of the sham transaction analysis.

Defendant concedes that the Eighth Circuit decision must be followed in litigation

before the District Courts of the Circuit, but contends that the *IES* decision does not

support the conclusion asserted by Plaintiff in its motion.

If the STARS transaction was congruent with the transactions that had occurred in

the *IES* case, Plaintiff's motion for a partial summary judgment would seem to be an

appropriate device for focusing the way in which at least a part of the dispute over

economic substance should be resolved.  However, the STARS transaction differs in

several respects from the IES transaction.  It is, therefore, necessary to consider whether

these differences might support the conclusion that the Eighth Circuit decision in the *IES*

case with respect to the treatment of foreign taxes does not automatically apply to the

foreign taxes paid in the STARS transactions.

Several elements of the *IES* decision raise questions about its applicability to the

STARS transaction.  First, the Court explicitly stated that:

> It also is important to note that these were not transactions conducted by alteregos
> of IES or straw entities created by IES simply for the purpose of conducting ADR
> trades.[6]

---

[6] 253 F.3d at 355.

The pleadings in this case indicate that some of the entities involved in the implementation of the STARS transaction may have been created specifically to implement the transaction. Moreover, at the October 14 Hearing with respect to the motions here under consideration, counsel for Plaintiff was not certain whether such entities continued to exist after the STARS transaction was completed.[7]

Secondly, the court in the *IES* case emphasized that:

"[T]he transaction [s] must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant." *Comm'r v. Court Holding Co.*, 324 U.S. 331 . . . (1945).  Each trade was an arm's-length transaction: "what was actually done is what the parties to the transaction purported to do."  Gran v. IRS (In re Gran), 964 F.2d 822 (8th Cir. 1992)).[8]

In this respect the court seemed to be relying upon the fact that the prices paid and received for the ADR's in the paired transactions were determined by pricing generally established by public trading.  In the STARS transaction, Plaintiff observes that the interest rate arrangements between Plaintiff and Barclay's Bank reflected market interest rates, but does not contend that other aspects of the financial arrangement between it and Barclay's were fixed by an identifiable and independently determined market rate.[9]

Finally, the court in the *IES* case concluded that its decision rested upon a broad

---

[7] Transcript p. 50.

[8] 253 F.3d at 356.

[9] Transcript pp. 49-50.

analysis of the transactions under review:

> We hold, *considering all the facts and circumstances of this case*, that the ADR
>
> trades in which IES engaged did not, as a matter of law, lack business purpose or
>
> economic substance. (Emphasis added)[10]

## Plaintiff's Motion for Partial Summary Judgment Is Denied

Like the *IES* case, the U.S. tax consequences of the STARS transaction will depend

in part upon the treatment of foreign taxes in determining whether the transaction had

sufficient economic substance. However, differences in the two transactions will have to

be analyzed to determine whether the foreign taxes in STARS, like the foreign taxes in

*IES*, should not be considered to be expenses in determining profitability in light of "all

the facts and circumstances." Two specific differences between the transactions derive

from the market pricing of the ADR's in the *IES* case and the absence of any specially

created entities used to implement those transactions.

The decision of the Court of Appeals in the *IES* case emphasizes these factors, but

provides no guidance as to their relative importance. These are questions that must be

addressed in the context of the evidence being developed in connection with the STARS

transaction. It is not possible to determine at this time whether there are any material facts

in dispute that would affect the precedential impact of the *IES* decision. Therefore,

Plaintiff's motion for a partial summary judgment is denied at this time without prejudice.

---

[10]  253 F.3d at 356.

As facts develop with respect to the applicability of the *IES* precedent to the STARS transaction in light, inter alia, of the potential considerations referred to herein, a renewed motion may be appropriate at a later time.

**Conclusion**

A copy of the Order resolving the motions considered herein is transmitted herewith.

Dated: October 31, 2011

Charles H. Gustafson
Special Master