UNITED STATES DICTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WELLS FARGO & COMPANY, et al., | ) |
| | ) |
| Plaintiff | ) Civil No. 09-cv-02764-PJS-TNL |
| | ) |
| v. | ) |
| | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant | ) |

Plaintiff has moved (Doc 281) to exclude expert testimony of Dr. David LaRue under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). Having considered the challenges to Dr. LaRue's qualifications, report, deposition, other submissions and potential testimony in this case in the context of the requirements of FRE 702 and the *Daubert* standards and procedures, it is HEREBY ORDERED that the Plaintiff's motion to exclude Dr. LaRue's testimony is DENIED.

Dated: May 27, 2013

Charles H. Gustafson
Special Master

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WELLS FARGO & COMPANY, et al., | ) |
| | ) |
| Plaintiff | ) Civil No. 09-cv-02764-PJS-TNL |
| | ) |
| v. | ) |
| | ) **Report of Special Master** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant | ) |

## REPORT DECIDING PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. DAVID LARUE

**Plaintiff's Motion**

Dr. David LaRue is one of several individuals retained by the Defendant as expert witnesses to analyze and explain various financial and other aspects of the STARS transactions that are a principal subject of this case. Plaintiff has moved (Doc 281) under Rule 702 of the Federal Rules of Evidence ("FRE") for an order excluding Dr. LaRue's participation as an expert witness.

Dr. LaRue has provided a substantial report reflecting his financial analysis and his views about the characterization of the various elements of the STARS

transactions.[1] He has also submitted to an extensive deposition with respect to his analysis and conclusions[2] and prepared a "Declaration" in response to aspects of the Plaintiff's motion considered herein.[3] Plaintiff's motion is based upon several arguments. They include the contentions:

1. That Dr. LaRue has no authority for his view that the STARS arrangements provided an "effective rebate" of U.K. income taxes paid in effect by the Plaintiff for which foreign tax credits have been claimed.
2. That Dr. LaRue's approach is unreliable because it ignores various Internal Revenue Code ("Code") provisions, regulations and judicial interpretations regarding the availability of foreign tax credits.
3. That Dr. LaRue's testimony is unhelpful and is likely to confuse the jury.
4. That, because Dr. LaRue's conclusions are not soundly based upon identifiable methodology, they are *ipse dixit* and amount to "pure advocacy."

The Defendant responds that Dr. LaRue is a well-respected expert in financial analysis, accounting and taxation and that his conclusions derive from an

---

[1] Plaintiff Memorandum in support of Motion, Exhibit 1.

[2] Plaintiff Memorandum in support of Motion, Exhibit 2.

[3] Defendant's Response in opposition to Motion, Exhibit 1.

independent analysis that is based upon his extensive experience with the issues that are at the heart of this portion of the case.

**Jurisdiction to Hear this Motion**

There is a question about the authority of the Special Master to hear and decide this motion. Article A(1)(a) of the Appointment Order of June 13, 2011, authorizes the Special Master to "hear any pretrial dispositive motion." Rule 7.1(c)(6)(D) of the Local Rules for the District of Minnesota includes in a list of dispositive motions: "motions to exclude experts under Fed. R. Evid. 702 and *Daubert.*"

A possible ambiguity arises, however, because Article B(20)(a) of the Appointment Order, which deals with "pretrial discovery motions," provides that the Special Master has no authority with respect to "motions *in limine* or other evidentiary motions directly ruling on admissibility of specific evidence." The Defendant suggests at least the possibility that this provision removes Plaintiff's motion here under consideration from the scope of authority of the Special Master. In fact, Defense Counsel stated during the hearing with respect to this motion that, if the issue had been raised during the discussions leading to the development and issuance of the Appointment Order, he would have opposed ceding authority to

the Special Master to deal with the motion here raised.[4]

Having considered carefully the question of authority appropriately raised by the Defendant at this time, the better course is to rely on the explicit language of the Appointment Order and Local Rule. Therefore, the merits of the Plaintiff's motion is herein considered and determined. In so doing, it might be noted that there are almost certain to be evidentiary consequences for any decision taken with respect to dispositive motions.

**Standard Applicable to Motion**

FRE 702 specifies the circumstances when an expert witness may testify:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

**Application of Standard**

The Supreme Court has authorized the trial court to serve as an effective

[4] Hearing of May 16, 2013, Transcript ("Hearing Transcript"), page 10.

gatekeeper to avoid circumstances when the proffered expert testimony does not satisfy the standards of FRE 702.[5] The courts have, however, made it clear that the performance of this function is to be performed flexibly and is not intended to remove from the decision maker (a jury in this case) appropriate authority simply because the court prefers the views of one expert over the views of another.[6] Consequently, the question at this point is not whether Dr. LaRue's disputed analyses and conclusions are correct. Rather, the question is whether his report, his deposition and his other submissions in connection with the case come within the criteria set forth in FRE 702 so that he may proffer evidence as an expert witness (that can, of course, be challenged in cross-examination, by documentary evidence and by other witnesses).

Dr. LaRue clearly satisfies the qualification standards of FRE 702. He has written, lectured and testified with respect to issues of accounting, finance and taxation. He is, therefore, qualified to analyze and testify with respect to financial arrangements of the kind involved in the STARS transactions. Further, Dr. LaRue's report, his deposition and other submissions indicate that he has invested considerable time and energy in studying the contracts that implemented the

---

[5] Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).

[6] See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1998).

STARS transactions and analyzing the financial consequences of those transactions.

**Basis for Plaintiff's Motion**

Both parties agree that the contractual and financial arrangements taken together to implement the STARS transactions are quite complex. Moreover, although it is assumed that a great deal of evidence that has been accumulated through discovery thus far is not yet available to the court, there seems to be substantial agreement between the parties about much of the factual substance of the contracts and the magnitude of various cash flows resulting from them.[7] The essence of the Plaintiff's motion herein derives from the characterization of those financial consequences by Dr. LaRue.

The Parties agree that income taxes were paid in effect by the Plaintiff to the United Kingdom and that such taxes are generally creditable for U.S. tax purposes.[8] While it is not the sole basis for this motion, a principal concern expressed by the Plaintiff is Dr. LaRue's characterization of financial benefits provided by Barclays Bank to the Plaintiff as an "effective rebate" of the U.K. income taxes. The Defendant cites this conclusion in support of its view that the

---

[7] Hearing Transcript, page 53.

[8] Hearing Transcript, pages 30-31.

STARS transactions do not have economic substance and must, therefore, be disregarded for U.S. income tax purposes. The Plaintiff asserts that the Defendant is using such an argument to substitute a legal theory for established law.

The Plaintiff's motion herein rests upon several contentions. It asserts that Dr. LaRue's analysis is not based upon reliable principles and methods and that it ignores statutory, administrative and judicial authorities that are crucial to an understanding of the Plaintiff's entitlement to the foreign tax credits that it has claimed. Further, the Plaintiff contends that Dr. LaRue's conclusions, particularly the view that an "effective rebate" of U.K income taxes was paid by Barclays to the Plaintiff so as to nullify the Plaintiff's entitlement to foreign tax credits, has no analytical basis and is in effect *ipse dixit* amounting to "pure advocacy."

The Plaintiff contends that Dr. LaRue's analysis and conclusions are inconsistent with applicable legal authority largely because it is focused on the incidence of the foreign income tax. It argues that Dr. LaRue's analysis that the Plaintiff "did not actually pay" the income tax to the U.K. government is inconsistent with the so-called "technical tax rule" established by the Supreme Court in Biddle v. Commissioner, 302 U.S. 573 (1938). In that frequently cited

case,[9] the Supreme Court held that a U.S. shareholder of a U.K. corporation was not entitled to a foreign tax credit even though the U.S. shareholder bore the incidence of U.K. income taxes paid by the U.K. corporation.

The Plaintiff also argues that the technical taxpayer rule has been ensconced in the regulations. Treas. Regs. §§ 1.901-2(f)(1)[10] and -2(f)(2)(i).[11] The Plaintiff notes as well that this line of analysis (emphasizing a technical tax approach) has in fact been asserted by the Government in other tax cases. See Doyon , Ltd. V. United States, 37 Fed. Cl. 10 (1996), rev'd 214 F. 3d 1309 (Fed.Cir. 2000).

The Plaintiff argues further that the Congress and Treasury have considered and determined when foreign tax credits otherwise available are to be denied because a subsidy has been provided by the foreign government. Code § 901(i) and Regs §§ 1.901-2(e)(3)(ii) and -2(e)(3)(i)(A). However, because the U.K. government has provided no subsidy to the Plaintiff, these provisions do not apply in this case. Therefore, it would be unfair and inappropriate to invoke the subsidy

---

[9] See, e.g., PPL Corp. v. Commissioner, U.S. Sup. Crt. No. 12-43, decided May 20, 2013, at page 4 of the Slip Opinion.

[10] "The person by whom tax is considered paid for purposes of sections 901 and 903 is the person on whom foreign law imposes legal liability for such tax . . . . [T]he person on whom foreign law imposes such liability is referred to as the 'taxpayer.'"

[11] "Tax is considered paid by the taxpayer even if another party to a direct or indirect transaction with the taxpayer agrees, as a part of the transaction, to assume the taxpayer's foreign tax liability."

analysis to the STARS transactions.

The Plaintiff also contends that Dr. LaRue's analysis, as reflected in his deposition, is particularly unreliable because of his conclusion that an "effective rebate" would still obtain even if Barclays' U.K. tax advantages had not materialized. The Plaintiff argues that the "effective rebate" conclusion could not possibly be sustained in such an event because there would be nothing to rebate. Dr. LaRue has responded in different ways as to whether the rebate analysis would apply if Barclays had not enjoyed U.K. tax benefits, but finally concludes that it would not be affected.[12] The Plaintiff also notes with respect to this issue that Dr. LaRue corrected a number of admitted mistakes in his deposition, further suggesting that the validity of his analysis and conclusions were clearly dubious.[13]

Finally, the Plaintiff contends that Dr. LaRue's conclusions are simply conclusory, i.e., *ipse dixit* and "nothing more than advocacy." If so, they would be rejected under the authority of the Supreme Court decision in Gen. Elec. Co. v. Joiner: " . . .nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an

[12] Hearing Transcript pages 22 et seq.

[13] Plaintiff Memorandum in support of Motion, Exhibit 3; Hearing Transcript, page 82 et seq.

analytic gap between the data and opinion proffered."[14]

**Defendant's Response**

Defendant's Counsel argues generally that, because other witnesses who would testify as experts have been retained by the Defendant, the motion here under consideration is in effect a motion for partial summary judgment that goes beyond the proper gatekeeping role of this court at defined by FRE 702 and as prescribed by the Supreme Court decision in the *Daubert* case.[15]

The Defendant specifically opposes the motion directed to Dr. LaRue's participation as an expert witness on the ground that all of the requirements of FRE 702 have been satisfied. It emphasizes that Dr. LaRue, as an expert witness, has not been asked to render and has not purported to render a legal opinion. Rather, he has simply analyzed transactional consequences from a factual perspective. That analyis is based upon his expertise and experience in finance, accounting and taxation and is, therefore, consistent with the role of expert witnesses in complex litigation and clearly satisfies all of the elements of FRE 702. The Defendant notes that the terms "rebate" and "effective rebate" are not legal conclusions, but simply a way of articulating Dr. LaRue's views about the

---

[14] 522 U.S. 136 (1997) at 146.

[15] Hearing Transcript, pages 40-41.

cash flow effect of the transactions involved.

The Defendant denies that Dr. LaRue's analysis fails to take into account applicable statutory and regulatory standards and asserts that Dr. LaRue's analysis and expected testimony are appropriate reflections of the use of his experience and expertise that cannot be correctly characterized as advocacy. It notes that courts have on many occasions applied the economic substance test and other judicially created standards to deny tax benefits even when transactions have been designed to fit within statutory rules.

The Defendant disagrees with Plaintiff's legal analysis of the technical tax rule and the criticism of Dr. LaRue's work based upon the "remote" possibility that Barclays might not enjoy the U.K. tax benefits contemplated by the STARS arrangements. It defends the corrections made by Dr. LaRue to his deposition as consistent with applicable rules and practice. It denies that the subsidy provisions of the Code and regulations support the Plaintiff's motion.

Finally, it argues that the Plaintiff's position effectively rejects the applicability of the economic substance doctrine as it has evolved over the years and notes that Dr. LaRue's analysis amounts to more than the conclusion that there was a "rebate" or "effective rebate" of U.K. income taxes paid by the Plaintiff.

**Analysis**

As indicated previously, the Defendant asserts that Plaintiff's motion herein has the effect of a motion for summary judgment because it would deny Defendant the ability to litigate the applicability of the economic substance doctrine. That view is not embraced by this decision, which is restricted to the criteria relevant to the motion under FRE 702 directed to the participation specifically of Dr. LaRue as an expert witness in this case.

The *Daubert* decision effectively charges trial courts with managing the use of expert witnesses to assure that they will assist in the determination of relevant factual questions and to assure that their testimony will not be confusing to fact-finders, particularly jurors who may have less experience with the issues in dispute. The Court of Appeals for the Eighth Circuit has on a number of occasions made it clear that the *Daubert* analysis is not intended to remove from the fact-finders issues about the credibility and effectiveness of expert opinion,[16] but has also affirmed the authority of a trial court to exercise discretionary authority to reject the proffer of expert testimony when its application of the FRE 702 criteria so warrants. [17]

---

[16] See, e.g., United States v. Finch, 630 F.3d 1057 (8th Cir. 2011).

[17] Nebraska Plastics, Inc. V. Holland Colors Americas, Inc., 408 F.3d 410 (8th Cir. 2005).

As previously indicated, the question is whether Dr. LaRue is qualified and whether his analysis and testimony may be of value with respect to relevant issues in the case and to consider whether it would be so confusing as to impair the validity of the fact-finding process or prejudice the Plaintiff in an unacceptable way.

Dr. LaRue's professional and academic record supports his treatment as an expert in financial, accounting and tax matters.

Dr. LaRue's analysis and conclusions are clearly open to challenge by the Plaintiff. However, an exhaustive consideration of the arguments and examination of the exhibits submitted by both sides in connection with this motion, and in particular the report of Dr. LaRue and his testimony in his deposition, does not adequately support a decision at this time that his potential testimony cannot be helpful, that it would be excessively confusing to a jury, that the basis for his analysis so disregards relevant legal authority as to be absolutely incorrect in all respects or that it necessarily amounts to pure advocacy. Accordingly, the Plaintiff's motion asking for the exercise of discretion under the *Daubert* procedures is denied.

It should be emphasized that the foregoing conclusions are necessarily based only upon the argumentation and materials presented to the court at this

time. As the time for trial approaches, it is expected that further evidence will be developed with respect to the issues that are addressed by Dr. LaRue's report and potential testimony and the evidence proffered by other expert witnesses.

**Order**

A copy of the Order denying Plaintiff's Motion is being transmitted herewith.

Dated: May 27, 2013

Charles H. Gustafson
Special Master