UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WELLS FARGO & COMPANY, on behalf of itself and the members of its affiliated group filing a consolidated return,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | Case No. 09-CV-2764 (PJS/TNL)<br><br>ORDER |

B. John Williams, Jr., Julia M. Kazaks, Alan Swirski, and Cary Pugh, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP; Walter A. Pickhardt, Charles F. Webber, and Martin S. Chester, FAEGRE BAKER DANIELS LLP; Jeffrey A. Sloan, WELLS FARGO & COMPANY, for plaintiff.

Dennis M. Donohue, John L. Schoenecker, Kari M. Larson, William E. Farrior, and Alan S. Kline, UNITED STATES DEPARTMENT OF JUSTICE, for defendant.

This matter is before the Court on the objection of plaintiff Wells Fargo & Company ("Wells Fargo") to the special master's December 6, 2013 order and report resolving a dispute over whether certain of Wells Fargo's documents are privileged.[1] The Court has conducted a de novo review pursuant to ¶ 8 of the Court's order appointing the special master. *See* ECF No. 102. Having carefully reviewed the disputed documents, the Court finds that the documents are not privileged and therefore affirms the order and report.

---

[1] On December 25, 2013, the special master issued an order revising and correcting his earlier order. ECF No. 438.

*A. Background*

The parties' dispute concerns two privileges: the attorney-client privilege and the "federally authorized tax practitioners" privilege created by 26 U.S.C. § 7525. Section 7525(a)(1) provides as follows:

> With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

Under § 7525(b), however, there is an exception to the privilege: the privilege does not apply to written communications "in connection with the promotion of the direct or indirect participation of the person in any tax shelter . . . ."

Before they submitted their dispute to the special master, the parties first attempted to resolve it by agreeing to a "quick peek" procedure. Under this procedure, Wells Fargo provided the disputed documents to Rick Watson, a trial attorney in the tax division of the Department of Justice who had no connection to this case. The Court entered an order under which Watson was to review the disputed documents and produce a list of documents that he believed were not privileged. ECF No. 236 ¶ 9. The government would thereafter be precluded from challenging Wells Fargo's claim of privilege as to any document that had not been included on Watson's list. *Id.* ¶ 12.

Following the quick-peek procedure, 161 privilege-log entries remained in dispute. The parties submitted briefing and supporting materials regarding those documents to the special master, who issued a report and order. Wells Fargo now objects to portions of that order.

*B.  Special Master's Authority*

Wells Fargo's first objection concerns the scope of the special master's authority under the Court's quick-peek order.  According to Wells Fargo, Watson determined that certain documents were within the scope of the § 7525(a) privilege, but found that the § 7525(b) exception to the privilege applied.  On review, the special master agreed with Wells Fargo that the § 7525(b) exception did *not* apply, but nevertheless held that some of the documents were not protected because they were not within the scope of the § 7525(a) privilege in the first place.  Wells Fargo contends that the special master had no authority to make the latter determination because Watson had already determined that the documents were within the scope of the § 7525(a) privilege.

Wells Fargo cites no language from the quick-peek order that supports its argument.  That is not surprising, as there is no such language in the order.  The quick-peek order did not authorize Watson to provide any commentary about *why* he believed certain documents were not privileged.  To the contrary, the order expressly limited Watson to listing only the log dates and log entry numbers for documents he found to be unprotected.  ECF No. 326 ¶ 9.  Because the quick-peek order did not authorize Watson to comment on the reasons for his decision, the order obviously did not bind the government or the special master to the extraneous commentary that Watson provided.  The quick-peek order only precludes the government from contesting a finding by Watson that a document *is* privileged; it does not preclude the government from making any argument that it wishes to make regarding a finding by Watson that a document is *not* privileged.  *See id*. ¶ 12.  Wells Fargo's contention that the special master was bound by Watson's commentary is without merit.

Wells Fargo also contends that the special master should not have addressed the government's argument regarding § 7525(a) because the government failed to make that argument in its opening brief. The Court disagrees. The government's opening brief certainly devoted more attention to § 7525(b) arguments, but it also raised § 7525(a) arguments. *See* ECF No. 351 at 21 (the § 7525(a) privilege "does not apply to documents reflecting communications regarding non-US tax matters" and "does not apply to documents which are not in fact communications").

Moreover, although it is true that courts normally do not address arguments raised for the first time in reply briefs, that does not mean that courts are *barred* from doing so, nor that a court commits reversible error if it chooses to do so. Wells Fargo does not contend that it was prejudiced in any way by the timing of the government's § 7525(a) argument, and Wells Fargo has not identified a single argument that it was unable to make to the special master. The Court therefore rejects Wells Fargo's contention that the special master exceeded his authority in finding that certain documents fell outside of the § 7525(a) privilege.

### C.  *Attorney-Client Privilege*

Wells Fargo next objects to the special master's determination that certain documents are not protected by the attorney-client privilege. Because this case arises under federal law, the federal common law of privilege applies. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989).

Under the federal common law, the attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir.

2011).  A communication is not privileged, however, merely because it is made to an attorney.  *United States v. Townsley*, 843 F.2d 1070, 1086 (8th Cir. 1988).  Instead, the communication must be made for the purpose of obtaining legal advice or services.  "Thus, where the attorney acts merely as a . . . scrivener for the client, or as a business adviser, the privilege is inapplicable."  *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (citations omitted).

As the party invoking the privilege, Wells Fargo has the burden of establishing that the privilege applies.  *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).  This burden includes establishing a factual basis for asserting the privilege.  *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997).

1. Board Memorandum

Wells Fargo first objects to the special master's determination that some 21 documents relating to the drafting of a memorandum to Wells Fargo Bank, N.A.'s board of directors are not privileged.  The memorandum explained the STARS transaction to the board and apparently was submitted to the board in connection with the board's consideration of resolutions approving the transaction.  ECF No. 348 at 14.  The documents in dispute consist both of standalone draft versions of the memorandum and emails with draft versions attached.[2]  Wells Fargo contends that these drafts and accompanying emails are privileged because they were circulated to Wells Fargo's in-house counsel during the drafting process.  The Court disagrees.

With respect to about half of these documents, there is no evidence that they were communicated to anyone at all, much less that they were communicated to Wells Fargo's in-

---

[2]Portions of some documents are bordered in green; with respect to those portions, the government is deemed to concede privilege as a result of the quick-peek procedure.  ECF No. 435 at 20.

house counsel.[3]  For that reason alone, Wells Fargo has failed to meet its burden to show that these documents are protected by the attorney-client privilege.

Even if Wells Fargo could show that all 21 of the documents were circulated to its in-house attorneys, the Court could not find that the documents were privileged, because Wells Fargo has failed to establish that the documents were circulated for the purpose of obtaining legal advice or services.  Wells Fargo argues that the Court can infer that drafts of the memorandum sent to in-house counsel were implicit requests for legal advice or services regarding the memorandum.  In particular, Wells Fargo contends that legal review of the drafts was necessary to "ensure compliance by Wells Fargo with corporate governance principles, a legal duty" and to "ensur[e] that Wells Fargo Bank is properly empowered to take certain actions . . . ." ECF No. 362 at 19.  But Wells Fargo offers no evidence to support these rather vague and abstract assertions.  By contrast, the government offers concrete evidence that Wells Fargo's in-house attorneys were involved in non-legal aspects of implementing the STARS transaction.  *See* Larson Decl., July 30, 2012 [ECF No. 352-1] Ex. 23 (email suggesting that attorney was involved in reviewing balance sheets); *id.* Ex. 25 (email suggesting that attorney was involved in selecting loans for inclusion in the transaction).  Under these circumstances, it is as likely that these attorneys were being asked to ensure the factual accuracy of the drafts as it is that these attorneys were being asked to provide legal advice.

---

[3]These documents include Nos. 1076, 1078, and 1089 in the revised June 6, 2011 log and Nos. 15, 50, 94, 237, 268, 269, 306, 331 in the revised June 13, 2011 log.  The log entries for all of these documents fail to identify any recipient, and none of the documents include an accompanying email.

Wells Fargo compares this case to *ADT Security Services, Inc. v. Swenson*, in which this Court found that certain emails to counsel were implicit requests for legal advice. No. 07-CV-2983, 2010 WL 2954545, at *4-5 (D. Minn. July 26, 2010). In *ADT Security*, however, the emails in question concerned the company's response to media coverage of a pending lawsuit involving the company. *Id.* at *5. It was not difficult to infer that the emails sought legal advice about the content of that response. Here, by contrast, there is little basis to infer that anyone was seeking legal advice regarding the draft versions of the memorandum. The Court therefore finds that Wells Fargo has failed to carry its burden to show that the drafts were communicated to its in-house attorneys for the purpose of obtaining legal advice or other legal services.

2. October 2002 Email

Wells Fargo next objects to the special master's determination that an October 30, 2002 email from Gary Peterson to Robert Kaukol is not privileged.[4] Gary Peterson is the director of Wells Fargo's state and local tax department; Robert Kaukol is an in-house attorney at Wells Fargo.[5] Pl.'s Ex. 8 [ECF No. 349-2 at 80]. The email is embedded in a larger chain, the remainder of which the special master found to be privileged. Wells Fargo contends that the email is privileged because it "addressed legal aspects of revising transaction documents for the STARS transaction." ECF No. 440 at 12. The Court disagrees. The tenor of the email suggests that Peterson is unhappy about substantive changes to certain documents because they affect the

---

[4]This email is part of Document No. 78 in the revised June 6, 2011 privilege log. Pl.'s Ex. 7 [ECF No. 349-2 at 77]. The email in question comprises Blocks 6 and 7 of the document; the special master's report explains how the blocks are numbered.

[5]According to Wells Fargo, Gary Peterson is a "federally authorized tax practitioner" for purposes of the statutory privilege in 26 U.S.C. § 7525. ECF No. 348 at 5 n.10. In its objection, however, Wells Fargo does not contend that this email is privileged under § 7525.

economic terms of the STARS transaction; Peterson does not appear to be seeking any legal advice.  The Court therefore overrules Wells Fargo's objection as to this document.

ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's objection [ECF No. 440] is OVERRULED.

2. The special master's orders and report [ECF Nos. 434, 435, 438] are AFFIRMED and ADOPTED.

Dated:  June 16, 2014            s/Patrick J. Schiltz
                                                     Patrick J. Schiltz
                                                     United States District Judge