UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

WELLS FARGO & COMPANY, on behalf
of itself and the members of its affiliated
group filing a consolidated return,

                    Plaintiff,

v.

UNITED STATES OF AMERICA,

                    Defendant.

Case No. 09-CV-2764 (PJS/TNL)


ORDER

---

B. John Williams, Jr., Alan Swirski, and Nathan Wacker, SKADDEN, ARPS,
SLATE, MEAGHER & FLOM LLP; Walter A. Pickhardt, Charles F. Webber,
Deborah A. Ellingboe, and Blake J. Lindevig, FAEGRE BAKER DANIELS LLP;
Jeffrey A. Sloan, WELLS FARGO & COMPANY, for plaintiff.

Dennis M. Donohue, William E. Farrior, Harris J. Phillips, and Vassiliki
Economides, UNITED STATES DEPARTMENT OF JUSTICE, for defendant.

This long-running lawsuit is before the Court regarding one final issue that must
be resolved before judgment is entered:  Can plaintiff Wells Fargo & Company ("Wells
Fargo"), having been denied a *credit* for the foreign taxes that it paid in connection with
a transaction called "Structured Trust Advantaged Repackaged Securities" ("STARS"),
instead *deduct* those taxes?  For the reasons that follow, the Court holds that (1) Wells
Fargo waived this issue by failing to raise it sooner and (2) in any event, Wells Fargo is
not entitled to deduct the foreign taxes.

*A.  Background*

Briefly stated, STARS was an extraordinarily complex transaction that Wells Fargo engaged in with Barclays, a British financial-services company.  The STARS transaction included four key elements:  (1) Wells Fargo would voluntarily subject some of its income-producing assets to U.K. taxation by placing them in a trust with a U.K. trustee; (2) Wells Fargo would offset those U.K. taxes by claiming foreign-tax credits on its U.S. returns; (3) Barclays would enjoy significant U.K. tax benefits as a result of Wells Fargo's actions; and (4) Barclays would compensate Wells Fargo for engaging in STARS by making a monthly "Bx payment."

Wells Fargo claimed foreign-tax credits for the U.K. taxes that it paid in connection with STARS.  The Internal Revenue Service ("IRS") disallowed the credits on the ground that STARS was a sham.  Generally speaking, "a transaction will be characterized as a sham if 'it is not motivated by any economic purpose outside of tax considerations' (the business purpose test), and if it 'is without economic substance because no real potential for profit exists' (the economic substance test)."  *IES Indus., Inc. v. United States*, 253 F.3d 350, 353 (8th Cir. 2001) (quoting *Shriver v. Comm'r*, 899 F.2d 724, 725-26 (8th Cir. 1990)).

This case was tried to a jury, which ultimately adopted the government's view that STARS consisted of two separate, independent transactions—a trust structure and a

loan. ECF No. 630 at 1. As instructed, the jury then determined whether each

transaction had a business purpose and economic substance. The jury found that the

trust structure had neither a non-tax business purpose nor a reasonable possibility of

pre-tax profit. ECF No. 630 at 2.[1] There is no dispute, then, that under the jury's

findings, the trust structure (which generated the foreign-tax payments) was a sham.

After being notified that the jury had reached a verdict, the Court informed the

parties that it intended to give them about an hour to discuss the verdict "and see if we

can figure out what our next steps are based on what the jury does." Trial Tr. 2293 [ECF

No. 648]. The Court then published the verdict and recessed for an hour. Trial Tr. 2298.

When the hearing resumed, the Court asked the parties, "What do we have to do

to get to entry of a judgment[?]" Trial Tr. 2299. The Court reiterated this point several

times. *See* Trial Tr. 2301-02 ("What I am trying to do is identify what do I need to decide

to get to the point where I can enter a judgment."); Trial Tr. 2304 ("the question isn't

trying to talk me out of something I've decided; the question is what additional things

do I have to make an initial decision on so I can get the judgment entered"); Trial

Tr. 2307 ("I'm hoping to identify here's the kind of legal decisions you need to make,

Judge, before you can enter a judgment. When you make these legal decisions, we can

_____

[1]As for the loan, the jury found that it had a reasonable possibility of pre-tax
profit, but that it did not have a non-tax business purpose. ECF No. 630 at 2.

go and figure out the numbers, and we can come back to you with a proposed judgment.").[2]

After some discussion, the parties identified two remaining issues that had to be resolved prior to judgment:  (1) whether Wells Fargo was subject to a negligence penalty under 26 U.S.C. § 6662(b)(1) in connection with its claim of foreign-tax credits; and (2) whether the loan portion of the STARS transaction should be disregarded as a sham.  Trial Tr. 2303-05.  When asked by the Court whether there was "anything else that needs to be briefed before I can enter judgment," Wells Fargo mentioned an undisputed issue that was the subject of a stipulation and then agreed that the Court had "identified the issues."  Trial Tr. 2307-08.  The Court then issued a briefing order,

---

[2]It is true, as Wells Fargo points out, that the Court at one point stated that "nobody would be waiving any rights."  Trial Tr. 2307.  As Wells Fargo candidly acknowledges, however, this statement was made in a different context.  The Court merely indicated that, by agreeing on a proposed form of judgment, the parties would not be waiving any right to dispute the legal determinations underlying their calculations.  For example, by agreeing on a proposed form of judgment, Wells Fargo would not be waiving its right to argue that the jury erred in finding that the trust structure had neither a non-tax business purpose nor a reasonable possibility of pre-tax profit.  *See* Trial Tr. 2307-08 ("When you make these legal decisions, we can go and figure out the numbers, and we can come back to you with a proposed judgment.  Obviously, nobody would be waiving any rights.  You'd just be saying that taking all the jury's and the courts' findings as existing, here's what the numerical result would be.").

ECF No. 629, and, after receiving that briefing, issued an order resolving the issues of penalties and the treatment of the STARS loan, ECF No. 650.[3]

The order directed the parties to submit a proposed form of judgment no later than June 30, 2017. ECF No. 650 at 19. On June 29, the parties filed a joint motion for an extension of time until July 31 to complete their calculations, obtain approval through the appropriate channels, and finalize the proposed judgment. ECF No. 651. Based on these representations, the Court granted the motion. ECF No. 653. On July 31, rather than submitting a proposed form of judgment, Wells Fargo filed a letter asserting that there remained one final legal issue to be resolved: whether Wells Fargo can deduct the foreign taxes that it paid, despite the fact that it cannot receive a credit for them. ECF No. 655. In response to Wells Fargo's letter, the government contended that Wells Fargo had waived this issue and that, in any event, Wells Fargo is not entitled to a deduction. ECF No. 656.

## *B. Waiver*

The Court agrees with the government that Wells Fargo has waived this issue. As recounted above, after trial the Court asked the parties to identify every remaining legal issue that had to be resolved before the Court could enter judgment. The Court

---

[3]The Court held that Wells Fargo is subject to the negligence penalty in connection with its claim of foreign-tax credits but that the STARS loan was not a sham (and therefore Wells Fargo was entitled to deduct the interest payments that it made on the loan).

repeatedly emphasized that it wanted to identify all remaining issues so that it could resolve those issues and enter judgment. Wells Fargo and the government explicitly agreed that the only remaining issues were (1) whether Wells Fargo was subject to the negligence penalty and (2) whether the loan component of the STARS transaction was a sham.

In accordance with the parties' agreement, the Court ordered briefing on those two issues. At no time during the briefing and resolution of those issues did Wells Fargo notify the Court or opposing counsel that there were any other legal issues remaining for the Court to resolve before the entry of judgment.

After resolving the penalty and loan issues, the Court ordered the parties to meet and confer on a proposed form of judgment and to submit their proposal no later than June 30. The day before their proposal was due, the parties requested a one-month extension for the purpose of completing their computations and finalizing their proposed judgment. ECF No. 651. Nothing in the parties' request even hinted that there were any outstanding legal issues that the Court needed to resolve. Indeed, the government asserts, and Wells Fargo does not deny, that Wells Fargo did not notify the government of its intent to seek deduction of the foreign taxes until July 28, just three days before the extended July 31 deadline—an extension that the Court had granted

only because it understood that the parties simply needed extra time to check each other's math.

As the government accurately notes, Wells Fargo was expressly given an opportunity, after trial, to identify all remaining legal issues that the Court needed to resolve. Trial Tr. 2307-08. Wells Fargo nevertheless did not inform the Court or the government that it intended to claim foreign-tax deductions. It cannot be the case that Wells Fargo was unaware of the issue. The issue is pleaded in Count Two of Wells Fargo's amended complaint, ECF No. 24 ¶¶ 93-95, and Wells Fargo mentioned the issue in its trial brief, ECF No. 578 at 23-24. While Wells Fargo's failure to raise the issue immediately after the verdict could be attributable to inadvertence, it is impossible to believe that Wells Fargo's subsequent *months-long* silence was unintentional. At the very least, it is clear that, at the time the parties asked to extend the June 30 deadline in order to finalize their proposed form of judgment, Wells Fargo had no intention of raising the issue; if it had, then it would have been impossible for the parties to meet the requested July 31 deadline. Under these circumstances, the Court agrees with the government that Wells Fargo waived the issue. *Cf. United States v. Dieguez*, 824 F.3d 718, 721-22 (8th Cir. 2016) (by declining court's offer to elaborate on its statement of reasons, defendant waived any argument that the court's explanation was inadequate).

*C. Entitlement to Deduction*

Even if Wells Fargo had not waived the issue, the Court would agree with the government that Wells Fargo is not entitled to deduct the foreign taxes. Once a transaction is found to be a sham, the transaction is disregarded for federal tax purposes. *WFC Holdings Corp. v. United States*, 728 F.3d 736, 742 (8th Cir. 2013) ("the economic substance doctrine requires that a court disregard a transaction that a taxpayer enters into without a valid business purpose in order to claim tax benefits not contemplated by a reasonable application of the language and the purpose of the Code" (citation and quotations omitted)). As noted, the jury found that the trust structure was a sham. Under the ordinary operation of the sham-transaction doctrine, then, Wells Fargo is not entitled to claim any tax benefits flowing from that trust structure.

It is true, as Wells Fargo points out, that courts do not necessarily disregard all aspects of a transaction found to be a sham; a taxpayer may claim tax benefits on the basis of separable, economically substantive elements of a sham transaction. Indeed, for that very reason, the Court agreed with Wells Fargo that it could deduct the interest payments that it made in connection with the STARS loan. *See* ECF No. 650 at 4-12. But the foreign-tax payments in this case are not separable from the sham trust transaction; to the contrary, Wells Fargo created the trust for the very purpose of incurring foreign-tax liability. *Cf. United States v. Wexler*, 31 F.3d 117, 126 (3d Cir. 1994) (rejecting

argument that taxpayer could deduct interest on a sham loan so long as it represented "genuine indebtedness" within the meaning of the Internal Revenue Code because that would have allowed the taxpayer to "reap the entire tax benefit of its sham transaction" that was the "centerpiece of the whole scheme").

By contrast, in two of the three cases Wells Fargo relies on, the economically substantive element of the transaction was distinct and separable from the sham portion. *See ACM P'ship v. Comm'r*, 157 F.3d 231, 262 (3d Cir. 1998) (permitting deductions of losses that were both "economically substantive and separable from the sham aspects of the underlying transaction"); *Rice's Toyota World, Inc. v. Comm'r*, 752 F.2d 89, 96 (4th Cir. 1985) (finding that a discrete portion of the transaction had economic substance).[4] As for the third case—*Jacobson v. Commissioner*—it is true that the Second Circuit held that "[e]ven if the motive for a transaction is to avoid taxes, interest incurred therein may still be deductible if it relates to economically substantive indebtedness." 915 F.2d 832, 840 (2d Cir. 1990). In a later case, however, the Second Circuit cautioned that *Jacobson* should not be read to permit interest deductions for

---

[4]Even if *Rice's Toyota World* could be read to support Wells Fargo's position, the Court would not find it persuasive. As the Third Circuit explained in *Wexler*, the Fourth Circuit's finding that the recourse note had economic substance is totally at odds with its finding that the note was simply a payment in exchange for expected tax benefits. *See Wexler*, 31 F.3d at 125 ("By the Fourth Circuit's own definition of economic substance, we do not see how the recourse note payment could possess economic substance given that the only purpose or gain was the tax benefit.").

loans that finance economically meaningless activity merely because the debt itself is genuine. *Lee v. Comm'r*, 155 F.3d 584, 586-87 (2d Cir. 1998). The Court therefore finds little support for Wells Fargo's position in these three cases.

Wells Fargo advances various reasons why it should nevertheless be allowed to deduct the foreign-tax payments, including that (1) Wells Fargo qualifies for the deduction under the plain terms of 26 U.S.C. § 164; (2) Congress has, in various circumstances, expressly permitted taxpayers to claim a deduction for foreign taxes even when they are legislatively denied a credit; and (3) Congress has specifically permitted taxpayers to claim deductions in circumstances in which a credit is denied because the transaction is considered abusive, *see* 26 U.S.C. § 901(k).

The Court is not persuaded. The fact that Wells Fargo qualifies for the deduction under the plain language of 26 U.S.C. § 164 does not answer the question whether such a deduction should nevertheless be disallowed under the sham-transaction doctrine. Every taxpayer whose tax benefits are disallowed under the sham-transaction doctrine qualifies for the claimed benefits under the plain language of the tax code; after all, the whole point of the sham-transaction doctrine is to disallow benefits to which the taxpayer would otherwise be entitled.

Likewise, the fact that Congress has identified and carved out certain circumstances in which a taxpayer can take a foreign-tax deduction rather than a credit

(in § 901(k) and in other provisions) does not convince the Court that it should ignore the ordinary operation of the sham-transaction doctrine.  Wells Fargo does not contend that any of these provisions actually apply to this case, and the Court does not read them to stand for the general proposition that a taxpayer should always be allowed to claim a foreign-tax deduction if a credit is denied for any reason, including because the transaction giving rise to the claimed credit was an economic sham.  To the contrary, the fact that Congress chose to specify certain circumstances in which deductions are allowed in lieu of credits suggests that Congress did not mean to override the sham-transaction doctrine in other circumstances.

Wells Fargo next points to *Hewlett-Packard Co. v. Commissioner*, in which, according to Wells Fargo, both the government and the Tax Court agreed that, if the taxpayer's claim for foreign-tax credits were disallowed, then the taxpayer would be permitted to take a deduction for the foreign taxes.  103 T.C.M. (CCH) 1736 (2012), *appeal docketed*, No. 14-73047 (9th Cir. Oct. 2, 2014).  As the government correctly observes, however, the Tax Court did not reach the question of whether the transaction was a sham because it agreed with the government's alternative argument that the transaction should be characterized as a loan.  *Id*. at *2.  Moreover, there is no indication in the opinion that the court specifically considered the issue of whether a taxpayer

should be permitted to take a deduction when the taxpayer has been denied a credit under the sham-transaction doctrine.

Finally, Wells Fargo points to a 2008 Technical Advice Memorandum in which, according to Wells Fargo, the IRS "effectively permitted" the taxpayer to take a deduction after it was denied a foreign-tax credit. ECF No. 660 at 9 n.7; I.R.S. Tech. Adv. Mem. 2008-07-015 (Feb. 15, 2008). Wells Fargo does not point to where in the lengthy Memorandum the IRS approved this arrangement. Assuming that Wells Fargo's reading is correct, however, whether a taxpayer should be allowed to deduct foreign taxes when it is denied a credit was clearly not one of the disputed issues in the case. Moreover, as in *Hewlett-Packard*, there were several alternative theories under which the taxpayer could be denied the credits, and there is little indication that the Memorandum specifically considered whether a taxpayer should be permitted to deduct foreign taxes for which it was denied a credit under the sham-transaction doctrine. To the extent that the Memorandum may have permitted the taxpayers in that case to claim deductions for foreign taxes, therefore, the Court does not regard it as either authoritative or persuasive. *See Wells Fargo & Co. v. Comm'r*, 224 F.3d 874, 886 (8th Cir. 2000) (noting that Technical Advice Memoranda have no precedential value, but may be persuasive).

For these reasons, the Court holds that, under the sham-transaction doctrine, Wells Fargo is not entitled to deduct the foreign taxes that it paid in connection with the STARS transaction. In light of this holding, the Court need not reach the government's alternative argument that Wells Fargo is prohibited from deducting the taxes by operation of 26 U.S.C. § 275(a)(4).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff is not entitled to deduct the foreign-tax payments that it made in connection with the STARS transaction.

2. The parties must submit their proposed form of judgment to the Court no later than September 25, 2017. No extension of this deadline will be granted.

Dated: September 15, 2017

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge